# Matter of Iurii DOBROTVORSKII, Respondent

*Decided September 5, 2025*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) In bond proceedings, the existence of a valid, reliable, and credible sponsor is relevant to the determination of flight risk.

(2) Immigration Judges may take into consideration all relevant and probative evidence, regardless of which party filed it, to determine if the evidence establishes custody factors.

FOR THE RESPONDENT: Mikhail Arsentiev, Esquire, Sacramento, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Roksana Gallus, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, Chief Appellate Immigration Judge; HUNSUCKER and GEMOETS, Appellate Immigration Judges.

GEMOETS, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals from the Immigration Judge's January 8, 2025,[1] order granting the respondent's release on a payment of a bond of $10,000 and alternatives to detention at DHS' discretion.[2] We will sustain the appeal, vacate the Immigration

---

[1] On February 11, 2025, the Immigration Judge issued a written memorandum in support of the bond order.

[2] The Immigration Judge held the bond hearing under *Rodriguez v. Robbins*, 804 F.3d 1060, 1089 (9th Cir. 2015), *rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018), which, under the authority of a permanent injunction issued by the United States District Court for the Central District of California, placed the burden on DHS to prove by clear and convincing evidence that an alien's continued detention is justified. Ordinarily, the alien in a custody determination under section 236(a) of the Immigration and Nationality Act, 8 U.S.C. § 1226(a) (2018), has the burden of proof to show that he or she merits release on bond. *Matter of R-A-V-P-*, 27 I&N Dec. 803, 804 (BIA 2020); *see also Matter of Guerra*, 24 I&N Dec. 37, 38 (BIA 2006) (explaining that a respondent "must establish to the satisfaction of the Immigration Judge and this Board that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight"). In *Jennings*, the Supreme Court of the United States reversed and remanded the case to the United States Court of Appeals for the Ninth Circuit for consideration of the constitutionality of prolonged detention but did not vacate the

Judge's order granting the respondent's release on bond, and order the respondent held in DHS' custody without bond.

Whether an alien poses a flight risk is a question of judgment that we review de novo, but the factual findings underlying the judgment are reviewed for clear error. *See* 8 C.F.R. § 1003.1(d)(3)(i)–(ii) (2020). The factors relevant to this custody redetermination analysis include, but are not limited to: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; and (4) the alien's manner of entry into the United States. *Matter of Guerra*, 24 I&N Dec. at 40.[3] Under our de novo review, we hold that the Immigration Judge erred in determining that DHS did not meet its burden of proving by clear and convincing evidence that the respondent is a flight risk.

The Immigration Judge clearly erred in finding that the documents relating to a family friend identified by the respondent as intending to offer him support, Mr. G-, who we informally identify as a "sponsor," sufficiently reduced the flight risk in these proceedings such that a bond of $10,000 will ensure the respondent's presence at future hearings. *See Cooper v. Harris*, 581 U.S. 285, 309 (2017) (stating that, under clear error review, reversal is appropriate only when the appellate adjudicator is "left with the definite and firm conviction that a mistake has been committed" (citation omitted)). The

_____

permanent injunction. *Jennings*, 583 U.S. at 312, 314. The Ninth Circuit, in turn, remanded the record to the United States District Court for the Central District of California but declined to vacate the permanent injunction. *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) ("Like the Supreme Court, we do not vacate the permanent injunction pending the consideration of these vital constitutional issues."). On remand, the Government moved the Federal district court to vacate the permanent injunction, and the Federal district court denied the motion because it interpreted the Ninth Circuit's remand as an instruction to keep the permanent injunction in place pending a determination of the constitutional issues. *See Rodriguez v. Barr*, No. 20-55770, 2021 WL 4871067, at *1 (9th Cir. Oct. 19, 2021). The Government appealed to the Ninth Circuit, and the Ninth Circuit remanded back to the Central District where the case remains unresolved. *Id*. at *1.

[3]  The Immigration Judge determined that DHS did not meet its burden of proving by clear and convincing evidence that the respondent's release would pose a danger to the community, and DHS does not appeal that holding. Therefore, the sole issue presented on appeal is whether, as the party delegated the burden of proof in these specific proceedings, DHS proved by clear and convincing evidence that the respondent is a flight risk. *See Matter of Voss*, 28 I&N Dec. 107, 108 n.2 (BIA 2020) (noting that an issue addressed in an Immigration Judge's decision is waived when a party does not challenge it on appeal).

record documents related to the proposed sponsor include a driver's license issued by the State of New Jersey, a section of a residential lease in Hallandale, Florida, Mr. G-'s lawful permanent resident card, a Federal tax return, an electric bill, and a statement reflecting a payment made on an automobile loan. The record does not, however, include any statement or affidavit from Mr. G- expressing his willingness to provide support to the respondent that could assist in his appearance at future hearings. *See Matter of R-A-V-P-*, 27 I&N Dec. at 806 (affirming the Immigration Judge's flight risk finding when, among other things, a proposed sponsor's letter "does not include any information regarding how [the sponsor] knows the respondent or the nature of their relationship").

The respondent's attorney claimed that he did not have sufficient opportunity to obtain an affidavit before the bond hearing. This explanation is not persuasive because the respondent, in response to DHS' opposition to custody redetermination, was able to obtain Mr. G-'s driver's license, his lawful permanent resident card, his Federal tax return, other documents related to his monthly expenses and income, and limited evidence of a residential lease before the bond hearing.

Further, the Immigration Judge clearly erred in finding that because DHS bears the burden of proof in these specific bond proceedings, and because bond proceedings in general are less formal than removal hearings, the lack of any affidavit from the proposed sponsor is not as relevant to determining the respondent's degree of flight risk. While DHS bears the burden in these bond proceedings under the ongoing injunction in *Rodriguez*, the respondent introduced relevant evidence into the proceedings and asserted a proposed sponsor who would ensure his appearance at future hearings. In bond proceedings, Immigration Judges may take into consideration all relevant and probative evidence, regardless of which party filed it, to determine if the evidence establishes custody factors. *See* 8 C.F.R. § 1003.19(d) (2025); *see also Matter of Guerra*, 24 I&N Dec. at 40–41. We note that while DHS may have the burden of proof in these proceedings, the respondent is always afforded the opportunity, and may be inclined, to present evidence to contest DHS' claims. *See, e.g.*, *Matter of Guerra*, 24 I&N Dec. at 40–41. The fact that bond proceedings are less formal than removal proceedings does not alleviate the burden on either party to present evidence in support of the arguments they are making in the bond proceedings.

The existence of a valid, reliable, and credible sponsor is relevant to the determination of flight risk. Although sponsorship is not a flight risk factor specifically enumerated in *Matter of Guerra*, 24 I&N Dec. at 40, evidence of a legitimate sponsor relates directly to whether the alien has a fixed address,

which is a flight risk factor enumerated in *Matter of Guerra*, as well as the alien's degree of community ties. *See Matter of R-A-V-P-*, 27 I&N Dec. at 806 & n.3 (stating that in assessing flight risk, the Immigration Judge may consider a sponsor's immigration status and ability to financially support an alien and ensure his or her presence at future immigration hearings because, while the Board's reasoning in *Matter of Guerra*, did not specifically enumerate those factors, those factors are relevant to whether the alien will have a fixed address during the immigration proceedings and the likelihood that the alien will appear at future hearings).

The Immigration Judge also clearly erred in finding that the proposed sponsor has a fixed address in Hallandale, Florida. The documents provide three different addresses for the sponsor, two in Hallandale, Florida, and another in Hopatcong, New Jersey. The documentation for a residential lease in Hallandale, Florida, provides a different address than the bill for electric services in the same location. There is no explanation from either the respondent or the sponsor as to which of the multiple addresses, if any, is Mr. G-'s fixed address, and whether the respondent will be residing with him at the address upon release from custody. Further complicating this factual analysis is the submission of a different address in New Jersey, without clarification by the respondent or Mr. G-. Thus, the Immigration Judge clearly erred in finding that the sponsorship documents reflected that the sponsor has a fixed address in Hallandale, Florida, and that the respondent would reside with him there. Accordingly, the Immigration Judge clearly erred in finding that the sponsorship documents reduced the respondent's flight risk such that he merits release on bond.

The Immigration Judge also clearly erred in finding that the respondent's "willingness to patiently wait in Mexico" for his CBP One appointment and to attend the scheduled border interview demonstrates that he is likely to appear for future court hearings. This finding is based on speculation, because the respondent recently entered the United States and has no established work history or any record of appearances in any courts in the United States. *See Matter of D-R-*, 25 I&N Dec. 445, 454 (BIA 2011) (holding that an Immigration Judge's findings may be "based on reasonable inferences from direct and circumstantial evidence of the record as a whole," but not on "rank speculation and conjecture" (citation omitted)), *remanded on other grounds by Radojkovic v. Holder*, 599 F. App'x 646 (9th Cir. 2015).

The Immigration Judge correctly found that the respondent does not have any family ties that may entitle him to remain in the United States permanently, or in fact any family ties to the United States at all. The Immigration Judge further determined without error that the respondent is

eligible only for humanitarian relief. Any grant of such relief is speculative at this stage and on this record. *See Matter of Andrade*, 19 I&N Dec. 488, 490 (BIA 1987) ("A respondent with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who, based on a criminal record or otherwise, has less potential of being granted such relief.").

Accordingly, we hold that the Immigration Judge erred in determining that DHS did not meet its burden of proving by clear and convincing evidence that the respondent is a flight risk. DHS correctly identified unreconciled inconsistencies in residential evidence presented by the respondent's proposed sponsor that undermines the assertion that this respondent is not a flight risk. The respondent has a very limited length of residence in the United States, he lacks family ties to the United States, his eligibility for relief is speculative, and he has not established that he has a fixed address, a sponsor willing to provide him a fixed address, nor any acknowledgment from the sponsor of an offer of support for expenses to ensure that the respondent appears at future immigration hearings. *See Matter of R-A-V-P-*, 27 I&N Dec. at 806–07 (assessing flight risk factors); *Matter of Guerra*, 24 I&N Dec. at 40 (describing factors relevant to bond determinations).

While we acknowledge the Immigration Judge's broad discretion in deciding whether to release an alien on bond, the facts in the record presented establish that the respondent is a significant flight risk. *See Matter of E-F-Y-G-*, 29 I&N Dec. 103, 104 (BIA 2025) (reversing Immigration Judge's grant of bond when the record reflected, among other flight risk factors, that the respondent had a short length of residency in the United States); *see also Matter of R-A-V-P-*, 27 I&N Dec. at 806–07 (affirming Immigration Judge's decision that the respondent's limited avenues for relief, minimal ties to the United States, and absence of a sponsor that will clearly provide a fixed address, financial assistance, and assurances that the respondent will appear at future immigration hearings demonstrate that the respondent poses too high a flight risk to merit release on bond). Thus, upon our de novo review, we conclude that DHS has met its burden of proving by clear and convincing evidence that the respondent is a flight risk such that his continued detention is justified.

**ORDER:** DHS' appeal is sustained, and the Immigration Judge's January 8, 2025, order granting the respondent's release on a payment of a bond of $10,000 and alternatives to detention at DHS' discretion is vacated.

**FURTHER ORDER:** The respondent is ordered held in DHS' custody without bond.